## W. M. PARDUE v. S. G. WHITE.

### Decided April 8, 1899.

**1. State School Land—Proof of Three Years Occupancy.**

The final proof of three years occupancy of public school land by a purchaser, accepted and acted upon by the Commissioner of the General Land Office under the Act of 1897, section 9, can not be impeached on the ground of falsity by persons subsequently applying to purchase the land.

**2. Same—Sale by Original Vendee—Forfeiture.**

A vendee of the original purchaser of school lands is required by the statute to make affidavit that his purchase is not in the interest of another; nor does conveyance by the vendee to a third person to enable the latter to hold and occupy the land for the benefit of the former, who is not an occupier of settler on the land, ipso facto operate as a forfeiture of the purchase.

**3. Same—Forfeiture—Payment of Interest.**

The provision of the Act of 1897 requiring the Commissioner of the General Land Office to forfeit sales of school lands theretofore made if any portion of the interest due thereon is not paid on the first day of November, in effect extended the time of the maturity of the annual interest installments from August 1st to November 1st, and the payment of interest for the year of 1897 was not a condition of the reinstatement of an application for the purchase before the first of November of that year.

**4. Same—Same—Reinstating Sale—Request for.**

The provision of 2 Sayles' Civil Statutes, article 4218f, that claims for the purchase of school lands which have been forfeited for nonpayment of interest may be reinstated on a written request of the purchaser or his vendee, is directory so far as it relates to a written as distinguished from an oral request.

APPEAL from Hall. Tried below before Hon. G. A. BROWN.

*Huff & Hall*, for appellant.

*J. K. Duke, H. E. Deaver*, and *Plemons & Veale*, for appellee.

HUNTER, ASSOCIATE JUSTICE.—*On Motion for Rehearing.*—On the original hearing of this cause we adopted the conclusions of fact and in the main the conclusions of law found by the district judge, and affirmed the judgment; but appellant complains that the conclusions of law so found are not sufficient to apprise him of the legal grounds upon which our decision is based, and that some of the conclusions of fact are not sustained by the evidence, and requests us to state both definitely, which under the circumstances, we believe it is our duty to do.

The case was an action of trespass to try title brought by appellant against appellee in the District Court of Hall County November 30, 1897, to recover section 8, block 19, situated in Hall County, surveyed for the public school fund by virtue of certificate No. 7-1252, issued to the H. & G. N. R. R. Co., containing 640 acres of land. The defense was not guilty, and the case was tried by the court without a jury, who filed his conclusions of fact and law, both of which are controverted by appellant, and a statement of facts brought up in the record, and we are called upon through the assignments of error to revise them both.

We think the evidence is sufficient to sustain the district judge's

conclusions of fact, but as they embrace six pages of the record, we will here only give the substance of such of them as we consider necessary to sustain our legal conclusions.

The section of land in question was, on August 19, 1890, public free school land, and had been classified and was on the market as watered agricultured land at $3 per acre, and on the 23d day of said month it was sold to Leah Smith at that price, she being an actual settler thereon. She remained on the land until June 1, 1891, but on May 7, 1891, she sold her claim to Oldham, and on the 22d of the same month he sold to Clevinger, who moved onto the land June 1, 1891, and remained until July 29, 1892, when he sold to Eddleman, who on said date settled thereon and remained until August 23, 1893.

On this last date Eddleman made proof as required by law of the actual settlement and occupancy of the land by him and his vendors for three consecutive years, and filed same in the General Land Office August 30, 1893. On March 25, 1895, Eddleman sold to Jones, and he to White, the appellee, on November 23, 1895. All interest payments were duly made as required by law to August 1, 1894, but the interest due for the years 1895 and 1896 was not paid when the same matured, and in consequence thereof on the 8th day of February, 1897, the Commissioner of the General Land Office canceled the sale and declared it forfeited for nonpayment of interest, and on February 19, 1897, said section was again placed on the market as watered agricultural land, at $2 per acre.

On April 13, 1897, appellee White leased the land from the State for five years, and under this lease placed $350 worth of permanent improvements on the same prior to August 20, 1897, making the value of all permanent improvements placed thereon since the sale to Leah Smith $750. On August 20, 1897, about 8 o'clock a. m., appellee White, being in the Land Office at Austin, orally requested the Commissioner to reinstate his claim to the section under the Leah Smith sale. Thereupon the Commissioner instructed the State Treasurer that upon payment by White of the interest due on the section into the Treasury, he would cancel the five years lease of the section made to White, and reinstate White as the purchaser under the Leah Smith sale. White thereupon offered to pay to the Treasurer all the interest that was due upon the section necessary to the reinstatement, when the Treasurer only demanded and required the payment of the interest for the years 1895 and 1896, which latter fell due on August 1, 1896, and this White then and there paid as demanded, and the Commissioner on the same day (August 20, 1897) canceled the lease and agreed to reinstate the sale, and the Treasurer having on September 8, 1897, reported to the Commissioner the payment to him by White of the past due interest as aforesaid, the latter officer on that day caused the reinstatement of White's claim to be entered of record in his office as of September 8, 1897.

Appellant Pardue's claim is as follows: On August 21, 1897, he filed in the Land Office his application and obligation to purchase the sec-

tion, offering $1.50 per acre.   On August 23, 1897, the Commissioner of the General Land Office approved and adopted the recommendation of the Commissioners Court of Hall County, classifying this section as dry grazing land at the valuation of $1 per acre.   On September 24, 1897, appellant presented and filed with the Commissioner of the General Land Office a second application and obligation to purchase the section as dry grazing land at $1 per acre, and upon each application deposited the money required of him with the Treasurer, but the same was returned to him by order of the Commissioner, because the sale to Leah Smith had been reinstated in favor of White as assignee.   It was, however, sent back by appellant to the Treasurer as a payment on his purchase, and is now in the treasury subject to his order.

On November 2, 1897, White paid the interest due for the year 1897 to the Treasurer, and his claim under the Leah Smith purchase was in good standing in the Land Office when this suit was filed.   The conveyance by Oldham to Clevinger was made to enable Clevinger to hold and occupy said land for the benefit of Oldham, who was not an occupant or settler on the land, but he received the consideration from Eddleman for the conveyance to him by Clevinger, which, it is claimed, tends to show fraud and collusion between Oldham and Clevinger.   But White, Jones, and Eddleman each afterwards paid a valuable consideration for the land in good faith, without any notice of the alleged fraud or collusion between Oldham and Clevinger, and full proof was made by affidavits, and filed with the Commissioner of the General Land Office, of actual settlement and occupancy of the land for three consecutive years, to the satisfaction of the Commissioner, it seems, long before appellant made any application to purchase the land or had obtained any interest therein whatever.

Appellant proved on the trial that Clevinger moved onto the land and held it merely as a hired man or employe of Oldham from June, 1891, to July, 1892, though Oldham was there part of the time and assisted in gathering a crop; and for this reason appellant contends there was not three consecutive years residence on the land by the owners thereof in good faith at the time Eddleman made his proof to that effect on August 23, 1893.   But we overrule this contention, because section 9 of the Act of 1887 provided, as does the same section in the Act of 1897, that the Commissioner of the General Land Office should prescribe suitable regulations whereby all purchasers should be required to reside upon, as a home, the land purchased by them for three consecutive years, and the purchaser was required after the expiration of the three years' residence to make proper proof of such residence and occupancy to the Commissioner by his affidavit, corroborated by the affidavits of three credible and disinterested citizens of the county in which the land is situated.

This proof, it seems, was filed by Eddleman with the Commissioner on August 30, 1893, three years after Mrs. Leah Smith made the purchase, and evidently to the satisfaction of the Commissioner, who by

the law was given jurisdiction to hear and determine the question; for he afterwards recognized the sale as valid, and the State received payments thereon, until on February 8, 1897, he forfeited it for nonpayment of interest, and afterwards, on August 20, 1897, agreed to reinstate the same and entered the order of record in pursuance thereof on September 8, 1897, in favor of White, the remote vendee of Eddleman and of Leah Smith.

We do not think that the appellant, who asserts a claim based upon an application to purchase subsequent to the act of final proof of three years occupancy, can be heard to thus collaterally or perhaps in any other manner attack the validity or sufficiency of the final proofs so accepted and acted upon by the Commissioner. If the affidavits were false, this would be only an irregularity which would not render the action of the Commissioner in accepting them void, any more than would be the judgment of a court based upon perjured testimony; and if not void, persons subsequently applying to purchase acquire no rights under such applications. Only the State or persons asserting prior rights to the section can question the correctness of the Commissioner's action and judgment in accepting such proofs as final. In this connection, it may be further noted that the law does not in terms require a vendee of the original purchaser to make affidavit that his purchase is not in the interest of another, nor in terms make such purchase and occupancy as was Clevinger's operate ipso facto as a forfeiture.

Appellant complains that the reinstatement of the Leah Smith sale was invalid for two reasons, because (1) it was made upon oral request to the Commissioner, when the law required written request, and (2) the interest due on the claim was paid only to August 1, 1896, when the law required it to be paid to the date of reinstatement.

The statute provides: "In any case where lands have been forfeited to the State for the nonpayment of interest, the purchasers or their vendees may have their claims reinstated on their written request, by paying into the treasury the full amount of the interest due on such claim up to the date of reinstatement; provided, that no rights of third persons may have intereevened." 2 Sayles' Civ. Stats., art. 4218f.

By the terms of the contract of sale in this case, and by the law in force when the contract was made, we understand that the annual installments of interest matured on the 1st day of August of each year, and by letter of the contract and of the law White should have paid the interest up to August 20, 1897, which would have been for one year and twenty days more than the Treasurer demanded of him. But by the Act of 1897 it was provided that if any portion of the interest due upon any sales theretofore made was not paid on the 1st day of November of any year, then the Commissioner was required to forfeit such sales, etc. 2 Sayles' Civ. Stats., art. 4218ll.

This article does not in terms extend the time of the maturity of the annual interest installments, but in effect it does so by withholding

from the Commissioner the power to forfeit for nonpayment of interest until the time named. And it seems that the Treasurer and Land Commissioner construed it as extending the time of payment from August 1st to November 1st, and therefore they did not consider the interest for the year 1897 due until November 1st, and only demanded of him the interest from 1895 and 1896, which he paid. We think the effect of this change in the statute was to extend the time of payment to November 1st, and that he paid all the interest that was due, within the meaning of this article, at the date of reinstatement.

The objection that White's request to the Commissioner to reinstate the original sale was not made in writing is, we think, also not well taken, because, in our opinion, that part of the statute is merely directory, and was probably intended for the benefit of persons residing away from the capital, by authorizing them to request reinstatement by letter merely; but we do not think that the Legislature intended by this provision to declare that the Commissioner might not accept an oral application to reinstate, if he chose to do so. At all events, we do not think a subsequent applicant could avail himself of this irregularity after the Commissioner had made the reinstatement.

This, we believe, in effect disposes of all the material questions raised by appellant, and shows the ground of our decision. Finding no error in the judgment, it is affirmed, and the motion for rehearing is overruled.

*Affirmed.*

Writ of error refused.