## J. S. O'KEEFE ET AL. v. RICHARD McPHERSON.

Decided February 23, 1901.

**1.—State School Land—Forfeiture—Resale.**

Under the statutes governing a sale of State school land made to an actual settler in 1897 and providing for a forfeiture of the sale in case of nonpayment of interest due thereon or nonoccupancy of the land, no forfeiture takes place, though there be such default by the purchaser, until the Land Commissioner makes in his office the indorsement of "Land forfeited," as required by the statute; and until this be done, the land can not be again purchased from the State by another. Sayles' Civ. Stats., arts. 4218l, 4218j. Bank v. Dowlearn, 59 Southwestern Reporter, 308, disapproved.

**2.—Same—Listing Land With County Clerk.**

Even if such forfeiture was duly indorsed and declared by the Land Commissioner, the land would not be subject to sale again until he had listed it with the county clerk, or otherwise placed it on the market under some proper regulation.

**3.—Same—Abandonment of Purchase.**

A sale of the land to a minor, made by the original purchaser before his contract is fulfilled with the State, can not, even of it be assumed that such sale to the minor is void, work an abandonment of the purchase such as will, of itself alone, authorize the Land Commissioner to resell the land to another, and without taking any of the steps requisite to placing it again on the market.

**4.—Same—Sale to Minor.**

While considering it not necessary to the disposition of this case to decide whether a sale of State school land to a minor, over 18 years old and an actual

settler, is void or not, the court deems it proper to say that it is disposed to adhere to its ruling in Weatherford v. McFadden, 21 Texas Civil Appeals, 260, upholding the validity of such a sale, as such ruling is not necessarily in conflict with Walker v. Rogan, 93 Texas, 248.

Error from Mitchell. Tried below before Hon. W. R. Smith.

*Jeffress & Hooper, Earnest & Shepherd,* and *Tarlton & Ayres,* for plaintiff in error.

*Martin Dies,* for defendant in error.

STEPHENS, ASSOCIATE JUSTICE.—O. D. Holloway was the original purchaser from the State of the school land in controversy, that is, section 20 and the north half of 32, block 26, Mitchell County. The controversy as to section 10, block 27 need not be noticed. The date of Holloway's purchase, which was valid and not questioned, was August 28, 1897, he being then an actual settler on section 20. May 20, 1898, he sold the land so acquired, and surrendered possession to J. S. O'Keefe, a minor over 18 years old, who at once became an actual settler on section 20, and a purchaser from the State of that section and the north half of 32 by the substitution of his own affidavit and obligation for those of Holloway. March 29, 1900, Richard McPherson, having invaded the possession of O'Keefe, made application to purchase the land in controversy as an actual settler on section 20, but his application was rejected by the Commissioner of the General Land Office. This suit was consequently brought by him against O'Keefe to establish his right to the land. The only issue submitted to the jury was whether or not McPherson was an actual settler when he made his application to purchase. The evidence warranted the verdict rendered in his favor upon this issue, and upon all other issues of fact the evidence was such as to warrant the court in treating them as not open to controversy. We proceed, therefore, to consider the questions of law arising upon the established facts.

McPherson evidently undertook to acquire the land from the State, and prevailed in the trial below, upon the assumption that the transfer from Holloway to O'Keefe, because of the minority of O'Keefe and because of the abandonment of possession by Holloway, had the effect of placing the land again upon the market; but in so holding we think the court erred. If it be conceded that the substitution of O'Keefe for Holloway as purchaser from the State was not authorized by law, that did not of itself, or together with the surrender or abandonment of possession by Holloway, work a forfeiture of the Holloway purchase, and place the land back upon the market. The decisions of our Supreme Court have established the proposition as the law of this State that any valid purchase of public school lands may be canceled by the State for default on the part of the purchaser in the payment of annual interest, without reentry or judicial ascertainment, upon the ground that, as the superior

title remains in the State and the contract is executory, the State has the same right as any other vendor, upon default of the vendee, to elect to treat the contract of sale as broken and terminated. Fristoe v. Blum, 92 Texas, 76; Standifer v. Wilson, 93 Texas, 232. But we know of no decision of that court warranting a third party—an intending purchaser, to make this election for the State. One recent decision has been found which holds that it is not necessary for the Land Commissioner to make the indorsement, "Land forfeited," as prescribed by law. Savings Bank v. Dowlearn, 59 S. W. Rep., 308. This requirement of the statute is held in the case just cited to be merely directory; but we can not accept this view. We note also that a writ of error seems to have been granted in the case, which is doubtless now pending in the Supreme Court. See foot note, 59 S. W. Rep., 308. The Land Commissioner is not the owner of the land, but merely the agent of the State, acting under a limited power of attorney, and must act in the manner prescribed. It is by taking such action on his part that the State elects, without suit, to rescind and not otherwise. This is clearly shown by the expressed will of the State as declared by the Legislature, to the effect that the commissioner "shall" make the indorsement, "and thereupon said land shall *thereby* be forfeited to the State," etc. Sayles' Civ. Stat., arts. 4218l, 4218ll. It is only after this is done that the land can be resold, and so important is it, that the time allowed a purchaser by the last of these articles in which to contest the forfeiture by suit is fixed by the date of the indorsement, "Land forfeited."

But it is contended in behalf of McPherson that the default of the purchaser in failing to reside on the land as required by law and in the contract of purchase, unlike the default in payment of interest, itself works a forfeiture, and places the land again on the market without any action on the part of the Land Commissioner. This contention involves a construction of the following language of section 11 of the Act of 1895, (Sayles'. Civ. Statutes, article, 4218l): "And if any purchaser shall fail to reside upon and improve in good faith the land purchased by him, he shall forfeit said land and all payments made thereon to the State, in the same manner as for nonpayment of interest, and such land shall be again for sale as if no such sale and forfeiture had occurred." Just preceding this sentence are the provisions for forfeiture for failure to pay interest. Section 9 of the same act (Sayles' Civil Statutes, article 4218j) provides that under the conditions there named, for any temporary abandonment of the land on account of the drouth, purchasers "shall not have the forfeiture *declared* against them under the law providing for the forfeiture of such lands for nonoccupancy." Unless by the clause, "in the same manner as for nonpayment of interest," the Legislature meant to refer to the next preceding sentence of that section for the manner of declaring the forfeiture, we are unable to explain why it was inserted at all, as it was not in the previous act on the subject of forfeiture, which was otherwise identical; or what it means; or what was meant in the quotation above made from the ninth section of the same

act by the use of the word "declared" in connection with forfeiture for nonoccupancy. What was said in the opinion of Chief Justice Tarlton, in Atkinson v. Bilger, 4 Texas Civil Appeals, 99, and by Justice Head, in Metzler v. Johnson, 1 Texaas Civil Appeals, 137, was with reference to the Act of 1887, which contained no such clause. In McKnight v. Clark, 58 Southwestern Reporter, 146, we were considering the effect of the failure of a "bona fide owner of and resident upon" other lands than school lands to reside upon the same or a part of the additional lands purchased as provided in article 4218fff, to which the clause of forfeiture above quoted does not seem altogether applicable, for such purchaser might fully comply with the article last named and his land be subject to forfeiture under article 4218l, which makes the failure to reside upon the land purchased, and not upon "other land," the ground of forfeiture. But however this may be, we are of opinion that it required action on the part of the Commissioner to forfeit the purchase of Holloway, it being legal and valid till it was in some way set aside at the instance of the State. We are also of opinion that the case is within the spirit if not the letter of the decision in Willoughby v. Townsend, 93 Texas, 80. True, the language "and such land shall be again for sale as if no such sale and forfeiture had occurred," is quite comprehensive and explicit, but not more so than the language in article 4218f, which declares that when any portion of the school land has been classified to the satisfaction of the Commissioner it "shall be subject to sale," and yet it was held in the case last cited that it is not really subject to sale till the Commissioner has notified the county clerk of the fact. What probably was meant is that it is again "subject to sale," as it originally was when classified to the satisfaction of the Commissioner, to be put upon the market and sold in the same manner. While it is not expressly declared that it shall be placed upon the market and sold as provided in the act, nothing else could have been contemplated, for there is no authority elsewhere prescribing how the Commissioner is to proceed. If the case be one not provided for in the act as to the manner of placing the land on the market, then it was incumbent on McPherson to show that some regulation had been adopted by the Commissioner covering such cases, and that he had complied with it. As the Commissioner rejected his application, the burden was on him to show that he was not warranted in doing so, especially as he was the plaintiff in the action. Reeves v. Smith, 23 Texas Civ. App., 711.

In view of these conclusions it becomes unnecessary to consider the effect of O'Keefe's minority upon his rights in the premises. Lest, however, our silence upon a question vitally affecting so many school land titles in Texas should be misconstrued, as it seems to have been a custom or regulation of the General Land Office of long standing to sell such lands to minors over the age of 18, we will add that we are disposed to adhere to the decision made by this court in Weatherford v. McFadden, 21 Texas Civil Appeals, 260, notwithstanding the subsequent decision of the Supreme Court in Walker v. Rogan, 93 Texas, 248. While there

may be conflict between the opinions in these cases, the facts of the two cases were quite different, and they arose under different statutes. It seems to us that cogent reasons may be given why a sale to a minor who is old enough to become an actual settler under statutes making that the *sole* qualification of a purchaser should be upheld, as was done in Weatherford v. McFadden, supra, especially where such statute has been repeatedly re-enacted without change in this respect after being construed by the land department of the State government for a series of years as authorizing such sales. To now overturn a construction so long acted upon by the Land Commissioner, and apparently sanctioned by the Legislature, will probably disturb numerous titles to school lands in this State, not merely of minors, old enough to become and who have become actual settlers, but also of many others who deraign title from such purchasers. The decision in Walker v. Rogan, supra, does not, we think, require of us such a course. But not finding it necessary in this case to discuss the merits of that question, we abstain from doing so.

Upon the conclusions already stated the judgment will be reversed and here rendered against defendant in error.

*Reversed and rendered.*

## ON MOTION FOR REHEARING.

It is urged in the written argument submitted with the motion that in the conclusions already filed we "failed to distinguish between an abandonment of the purchase by one who files his voluntary conveyance, and an abandonment of the land" by failure to reside on it as required by law. But we fail to see how this distinction is to benefit defendant in error. If the action of Holloway in making, or attempting to make, a transfer of his right to O'Keefe is to be construed as an abandonment of the original purchase, so as to authorize the State, like any other vendor, to elect to treat the contract of sale as broken and terminated, there is no evidence in this record that the State or any of its officers ever made any such election. The acceptance by the Land Commissioner of O'Keefe as purchaser in lieu of Holloway was an affirmance rather than a repudiation of the original sale, and if, by reason of the minority of O'Keefe, this substitution was not authorized by law, the act of the Land Commissioner in assenting to it was in no sense the act of the State, and did not affect the question one way or the other. If, then, without any election on the part of the State, a purchaser like Holloway can put an end to his obligation as such purchaser by his own voluntary abandonment of the contract, what becomes of the argument that a minor can not become a purchaser of school land because he can only execute a voidable obligation? In other words, if the law is to receive the construction that any purchaser of school land may terminate his contract with the State at will, what ground is left for the contention that the disability of minority is a bar to the right of an

actual settler otherwise competent to purchase such land from the State? The question admits of but one answer, for the obligation, whether it be that of adult or a minor, would be voidable at the pleasure of the maker. The argument proves too much for defendant in error, for it estab-. lishes the validity of the transfer to O'Keefe, notwithstanding his minority.

It is, however, insisted that as Holloway was authorized by article 4218k of the Revised Statutes to have a new purchaser substituted, what was done in this instance to accomplish that result had the effect of placing the land again on the market. But manifestly there no merit in this contention. If the land can be said in such case to be again placed on the market, it is certinly in a very limited sense, for it can only be sold under this article of the statute to the person selected by the original purchaser.

As to the difficulty of declaring a forfeiture where the obligation of a minor has been substituted for that of the original purchaser, and the original obligation has been canceled or surrendered, we need only add that if the Land Commissioner has, by doing what the law did not authorize, placed it out of his power to declare a forfeiture as provided by law, the State is not without a remedy, or at least not without the power to create one.

The motion will be overruled.

                                                        *Overruled.*

Writ of error refused.